**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA; BOARD OF TRUSTEES OF THE UNIVERSITY OF THE DISTRICT OF COLUMBIA; and ANTOINETTE MITCHELL, in her Official Capacity as State Superintendent of Education of the District of Columbia,<br><br>Defendants. | Civil No. 26-3166<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. Federal law prohibits illegal aliens from being eligible to receive post-secondary education benefits based on residence within a State if such benefits are denied to U.S. citizens residing in other States. *See* 8 U.S.C. § 1623(a). Federal law also requires any State that wishes to extend public benefits to illegal aliens after August 22, 1996, to pass a law "which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). There are no exceptions. Yet, illegal aliens have been receiving in-state tuition and financial aid on the basis of residence in the District of Columbia ("D.C.") for decades. And no D.C. law affirmatively makes illegal aliens eligible for financial aid.[1]

2. Section B722.2 of title 8 of the D.C. Municipal Regulations ("Residency Rule") allows illegal aliens who are living in D.C. to access in-state tuition while prohibiting nonresident

[1] The District of Columbia is defined as a State for the purposes of Title 8 of the United States Code. *See* 8 U.S.C. § 1101(a)(36).

U.S. citizens from accessing the same benefits. D.C. Mun. Regs. tit. 8, § B722.2 (eff. July 3, 1998).

3. This rule constitutes blatant unequal treatment favoring illegal aliens over U.S. citizens. Worse, such preferential treatment is squarely prohibited and preempted by Congress. Specifically, federal law mandates that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, the Residency Rule's extension of eligibility for post-secondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

4. Courts have long recognized 8 U.S.C. § 1623's express preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

5. Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g.*, *United States v. Illinois*, No. 25-CV-1691,

2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F. Supp. 3d ---, No. 8:26-CV-172, 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause). This Court should do the same.

6. Moreover, because D.C. allows illegal aliens to receive financial aid without explicit statutory authorization, D.C. violates 8 U.S.C. § 1621. *See United States v. Kentucky Council on Postsecondary Educ., et al.*, No. 3:25-cv-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was a regulation, not an enacted state law as required by Section 1621(d)). Thus, D.C.'s postsecondary education benefits scheme is preempted twice over, and this Court should join the other courts in invalidating D.C.'s law.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

9. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

10. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Homeland Security ("DHS") and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

11. Defendant District of Columbia is a state of the United States for the purposes of Title 8 of the United States Code. *See* 8 U.S.C. § 1101(a)(36).

12. Defendant Board of Trustees of the University of the District of Columbia governs the University of the District of Columbia and is responsible for setting tuition. *See* D.C. Code Ann. § 38-1202.06 (West 2014 & Supp. 2025).

13. Defendant Antoinette Mitchell is the State Superintendent of Education of the District of Columbia and is sued in her official capacity as "the chief state school officer for the District of Columbia." D.C. Code Ann. § 38-2601(c) (West 2014). Superintendent Mitchell heads the Office of the State Superintendent of Education ("OSSE"), which has authority to award scholarships and other financial aid. *See id.* § 38-2602(b)(29A) (West, Westlaw through Apr. 29, 2026).

## FEDERAL LAW

14. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

15. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

16. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

17. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish

immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

18. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

19. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

20. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

21. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

22. As relevant here, PRWORA provides: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which

such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

23. But even in such cases, a state may not offer in-state tuition ("resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id*.

24. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

25. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

26. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[2] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

---

[2] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/V5KX-DX6Q.

27. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[3] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

28. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

## DISTRICT OF COLUMBIA LAW

### I. D.C. makes illegal aliens eligible for discounted, in-state tuition based on residency while denying such benefits to nonresident U.S. citizens.

29. All non-federal, public, postsecondary educational institutions in D.C. are part of the University of the District of Columbia ("University").[4] Congress established the University in 1974 and delegated its governance to the Board of Trustees of the University ("Board"). District of Columbia Public Postsecondary Education Reorganization Act ("D.C. University Act"), Pub. L. No. 93-471, § 205, 88 Stat. 1423, 1426 (1974) (codified as amended at D.C. Code Ann. § 38-1202.06 (West 2014 & Supp. 2025)).

---

[3] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/83KY-N8Q9.

[4] *About the University of the District of Columbia*, Univ. of D.C., https://www.udc.edu/about/ [https://perma.cc/BD4X-MZ4K] (last visited Aug. 27, 2026).

30. Congress tasked the Board with setting tuition rates for the University. D.C. Code Ann. § 38-1202.06(8) (West 2014 & Supp. 2025). In 1996 the Council of the District of Columbia instructed the Board to charge D.C. residents a lower tuition rate than nonresidents.[5] Fiscal Year 1996 Budget Support Act of 1996, No. 11-279, § 301(f), 43 D.C. Reg. 2978, 2982 (June 7, 1996) (codified as amended at D.C. Code Ann. § 38-1204.07 (West 2014)).

31. The Board complied. Accordingly, its regulations provide that "resident, non-resident, full-time, or part-time students shall pay the amount set forth for students within their particular category." D.C. Mun. Regs. tit. 8, § B725.3 (eff. July 3, 1998). The Board charges D.C. residents $324 per credit hour for bachelor's degree programs at the University and nonresidents $680 per credit hour. *Id.* § B728.2 (eff. Aug. 21, 2026). For associate's degree programs, residents pay $117 per credit hour and nonresidents pay $332. *Id.* And resident full-time law students pay $6,219 per semester while nonresident full-time law students pay $12,436. *Id.*

32. The Board has promulgated a general rule defining residency for in-state tuition purposes. A resident is "a student domiciled in the District of Columbia." D.C. Mun. Regs. tit. 8, § B799.1 (eff. Sept. 5, 1996).

33. The Residency Rule explains how students may establish such residency:

> Any applicant for . . . preferential tuition . . . shall be presumed to be a bona fide resident of the District of Columbia if the applicant has been, for the year prior to the date of the application for preferential tuition:
>
> (a) Domiciled in the District of Columbia and either paid District of Columbia income taxes or received public assistance from a District of Columbia government agency; or
>
> (b) Claimed as a dependent on District of Columbia resident tax returns filed by a parent or spouse of the applicant domiciled in the District of Columbia; or
>
> (c) Graduated from a D.C. Public High School within the year before enrollment and was classified as a resident of the District of Columbia by the D.C. Public Schools.

---

[5] The Council may enact laws concerning the University. *See* § 38-1204.06.

D.C. Mun. Regs. tit. 8, § B722.2 (eff. July 3, 1998).

34. Because it contains no lawful immigration status or residency requirement, the Residency Rule rewards illegal aliens with eligibility for in-state tuition benefits in D.C. while denying that same benefit to U.S. citizens who are not residents of D.C.

## II. D.C. also makes illegal aliens eligible for financial aid programs based on residency while denying eligibility to nonresident U.S. citizens.

35. The Superintendent heads D.C.'s Office of the State Superintendent of Education ("OSSE") and is "the chief state school officer for the District of Columbia." D.C. Code Ann. § 38-2601(c) (West 2014). D.C. has granted OSSE authority to "[a]ward[] scholarships and financial assistance for tuition, fees, room and board, books, supplies, and other costs of postsecondary education." *Id.* § 38-2602(b)(29A) (West, Westlaw through Apr. 29, 2026). The Superintendent offers several financial aid programs under this general grant of authority.

36. The DC Futures Program "funds tuition and fees in the form of scholarships and provides other financial support" for students attending certain D.C. colleges.[6] To receive benefits, students "must be able to demonstrate that they have been a resident of the District for the 12 months preceding their application."[7] D.C. Off. of the State Superintendent of Educ., *supra* note 7. Applicants who are younger than twenty-four years old "are deemed to have their parent/guardian's residency" unless an exception applies.[8] *Id.* at 2.

[6] D.C. Off. of the State Superintendent of Educ., *DC Futures Program: Program Overview and Policy Guidance* 1 (Jan. 2026), https://osse.dc.gov/sites/default/files/dc/sites/osse/page_content/attachments/DC%20Futures%20Policy%20Document_2026-27_Final.pdf [https://perma.cc/MJY2-5MVX].

[7] To be eligible, a student must also meet "financial/income requirements"; be "pursuing their first associate or first bachelor's degree"; and have "graduated from any high school," "received a National External Diploma Program (NEDP) diploma," or "passed the GED." D.C. Off. of the State Superintendent of Educ., *supra* note 7.

[8] The following applicants are not presumed to share their parent's or guardian's residency under the DC Futures Program: (1) "[a]pplicants who are married or separated but not divorced"; (2)

37. The OSSE Scholars Summer Enrichment Program "provides high-achieving, academically-motivated students who exhibit financial need with the opportunity to attend selective summer college programs" at "top tier universities across the country."[9] To participate, a student must "[b]e a resident of the District of Columbia."[10]

38. The Mayor's Scholars Undergraduate Program "provides need-based funding for eligible District of Columbia residents earning their first associate or first bachelor's degree at select area colleges and universities."[11] To be eligible, a student "must have been a resident of the District of Columbia for the last 12 months preceding enrollment in [his] first year of college."[12]

39. D.C. residency is necessary to qualify for benefits under all three programs. But a student need not be a U.S. citizen or an alien with lawful immigration status.

---

"[a]pplicants who provide at least half the support for a child or other dependent"; (3) "[a]pplicants serving as active duty military"; (4) "[a]pplicants who have had both parents deceased since age 13, were in foster care, or were a ward or dependent of the court"; (5) [e]mancipated minors or students in a legal guardianship"; and (6) "[u]naccompanied/homeless youth." D.C. Off. of the State Superintendent of Educ., *supra* note 7, at 2.

[9] *OSSE Scholars Summer Enrichment Program*, D.C., https://osse.dc.gov/service/osse-scholars-summer-enrichment-program [https://perma.cc/G2HR-72HG] (last visited Sept. 1, 2026).

[10] D.C. Off. of the State Superintendent of Educ., *OSSE Scholars Frequently Asked Questions (FAQ)* 1 (n.d.), https://osse.dc.gov/sites/default/files/dc/sites/osse/page_content/attachments/2027%20OSSE%20Scholars%20Applicant%20FAQs%20.pdf [https://perma.cc/4644-CREM]. To be eligible for the OSSE Scholars Summer Enrichment Program, a student must also have "[a]ttend[ed] a District of Columbia public or public charter high school"; "[b]e a high school sophomore or junior at the time of submitting an application"; "[d]emonstrate financial need"; "[h]ave a cumulative grade point average (GPA) of 3.2 or higher"; and "[h]ave leadership potential and desire to attend college after high school." *Id.*

[11] *District of Columbia Mayor's Scholars Undergraduate Program*, D.C., https://osse.dc.gov/mayorsscholars [https://perma.cc/8LSQ-ATMH] (last visited Sept. 1, 2026).

[12] *District of Columbia Mayor's Scholars Undergraduate Program Information for Students*, D.C., https://osse.dc.gov/page/district-columbia-mayor%E2%80%99s-scholars-undergraduate-program-information-students [https://perma.cc/FS6N-T9T6] (last visited Sept. 1, 2026). To be eligible as a first-time recipient of benefits under the Mayor's Scholars Undergraduate Program, a student must also be "[a] graduate (or expected graduate) of a public high school in the District of Columbia . . . within the years 2011-2026" or "passed the GED exam or earned a diploma through the National External Diploma Program (NEDP)[] within the years 2011-2026." *Id.*

## III. No state law affirmatively authorizes the Superintendent to make illegal aliens eligible for financial aid.

40. The Superintendent offers the DC Futures Program, the OSSE Scholars Summer Enrichment Program, and the Mayor's Scholars Undergraduate Program under OSSE's general grant of authority to "[a]ward[] scholarships and financial assistance for tuition, fees, room and board, books, supplies, and other costs of postsecondary education." D.C. Code Ann. § 38-2602(b)(29A) (West, Westlaw through Apr. 29, 2026).

41. The Superintendent offers all these programs to illegal aliens. But no state law affirmatively authorizes her to do so.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF THE RESIDENCY RULE)

42. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

43. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

44. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

45. The Residency Rule extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

46. Accordingly, the challenged provision, section B722.2 of title 8 of the D.C. Municipal Code, is expressly preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF THE SUPERINTENDENT'S PROVISION OF FINANCIAL AID TO ILLEGAL ALIENS IN VIOLATION OF 8 U.S.C. § 1623(a))**

47. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

48. The Superintendent extends eligibility for state-funded financial aid and scholarships such as the DC Futures Program, the OSSE Scholars Summer Enrichment Program, and the Mayor's Scholarship Undergraduate Program to illegal aliens based on residency while denying the same benefits to U.S citizens regardless of residency contrary to 8 U.S.C. § 1623(a).

49. Accordingly, the Superintendent's provision of financial aid to illegal aliens based on residency while denying the same benefits to U.S. citizens regardless of residency is preempted and unconstitutional.

**COUNT III**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF THE SUPERINTENDENT'S PROVISION OF FINANCIAL AID TO ILLEGAL ALIENS IN VIOLATION OF 8 U.S.C. § 1621(d))**

50. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

51. The Superintendent extends eligibility for State and local public benefits to illegal aliens without a state law affirmatively providing eligibility for such benefits. *See* 8 U.S.C. § 1621(a) and (d).

52. Accordingly, the Superintendent's provision of such benefits to illegal aliens is preempted and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that section B722.2 of title 8 of the D.C. Municipal Code violates the Supremacy Clause because it extends eligibility for postsecondary education benefits to illegal aliens but not nonresident U.S. citizens through State law, and is therefore unconstitutional and preempted;

2. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing section B722.2 of title 8 of the D.C. Municipal Code, or any similar subsequent statute or regulation, because they extend eligibility for postsecondary education benefits to illegal aliens but not nonresident U.S. citizens through State law;

3. That this Court issue a permanent injunction prohibiting Defendants as well as their successors, agents, and employees, from awarding scholarships and financial assistance for postsecondary education costs to aliens who are not lawfully present in the United States and who would otherwise be ineligible for such benefits under 8 U.S.C. § 1621(d), because the District of Columbia has not enacted any law after August 22, 1996, affirmatively providing for such eligibility;

4. That this Court award the United States its costs and fees in this action; and

5. That this Court award any other relief it deems just and proper.

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

ANNA EDWARDS
JULIE AXELROD
Senior Counsel to the Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

HILARY K. PERKINS
Director
Enforcement and Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Litigation Section

*/s/ Alexander William Furtaw*
Trial Attorney
United States Department of Justice
Civil Division
Enforcement and Affirmative Litigation Branch
950 Pennsylvania Ave NW
Washington, D.C. 20530
Tel: (202) 598-5667
Email: alexander.w.furtaw@usdoj.gov

*Attorneys for the United States*